## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MARIE KNOSKIE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:16CV00019 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | By: James P. Jones |
| **CORRECTIONS,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Joshua Erlich, Benjamin W. Owen, Davia Craumer, and Katherine L. Herrmann, The Erlich Law Office, PLLC, Arlington, Virginia, for Plaintiff; E. Lewis Kincer, Jr., Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendant.*

The plaintiff, Marie Knoskie, has asserted claims of race discrimination, creation of a hostile work environment based on race, and retaliation for engaging in a protected activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") against her employer, defendant Virginia Department of Corrections ("VDOC"). VDOC has moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).[1] In response, Knoskie opposes the Motion to Dismiss

---

[1] Knoskie initially asserted a claim under 42 U.S.C. § 1981 (Count II), as well as claims under Title VII (Counts I and III). The parties later stipulated to the voluntary dismissal of Count II as well as any claim for punitive damages.

- 1 -

and, alternatively, seeks leave to further amend her Amended Complaint. For the reasons that follow, I will grant VDOC's Motion to Dismiss as to the claims of race discrimination and retaliation, deny VDOC's Motion to Dismiss as to the claim of creation of a hostile work environment based on race, and grant Knoskie's request to amend.[2]

I.

The Amended Complaint alleges the following facts, which I must accept as true for the purpose of deciding the present motion.

Marie Knoskie is an African-American woman who has been employed by VDOC since August 2000. Knoskie works as a Corrections Officer at Red Onion State Prison ("Red Onion") in Pound, Virginia. During her employment, the use of racial slurs and making of race-related jokes by non-black officers was common and accepted. Knoskie did not feel confident that her fellow officers would protect her in the event of inmate violence. Red Onion also experienced failures of safety and security that were unique to black workers.

On April 1, 2013, Knoskie discovered that someone had written the phrase "I hate n******" in a log book in the C2 control room. Am. Compl. ¶ 19, ECF No. 5. Because log books are only available to corrections officers, the phrase

---

[2] Knoskie has not filed a formal motion seeking to amend, but I construe section IV of her Memorandum in Opposition to Defendant's Motion to Dismiss as such a motion. See Pl.'s Mem. Opp'n Mot. to Dismiss 13-14, ECF No. 17 ("Plaintiff Requests Leave to Amend If the Court Finds Deficiencies in the Complaint").

- 2 -

could not have been written by an inmate. Knoskie reported the incident to management, including Chief Warden Randall Mathena (her supervisor), Assistant Warden John Walruth, and EBT manager Israel Hamilton. On April 12, 2013, she asked Mathena if she should document the incident in CORIS, the system used by VDOC to manage incident reports. Mathena told her not to document the incident in CORIS and to instead give a written incident report to Hamilton. Knoskie did so, but never heard anything further. According to Knoskie, VDOC took no action to resolve the matter.

Following this incident, Knoskie was not asked to work in the C2 control room, where the log book with the slur was located, until February 2014. On February 18, 2014, she was told to work at that post by Sergeant Brandon Hall. When Knoskie reminded Hall of the slur and told him she was uncomfortable working there, he "said he had forgotten the incident, apologized, and reassigned [her] to a different location." *Id.* at ¶ 29.

On February 27, 2014, Knoskie looked in the log book and found that the racial slur was still there. The same day, she was told by Unit Manager Andy Kilborn to work in the C2 control room. She refused to work the post because of the slur and told Kilborn that "she believed she was being subjected to a hostile work environment based on her race." *Id.* at ¶ 33. In response to this incident and

Knoskie's refusal to work, Mathena sent her home because she was "hysterical" and "unable to perform [her] job." *Id.* at ¶ 34.

The next day, February 28, Knoskie met with Chief Warden Mathena, Assistant Warden Walruth, Unit Manager Kilborn, and Human Resources Head Officer Renee Conley. At this meeting, Mathena mentioned a past occasion on which Knoskie had reported swastikas carved into another post and asked why she had continued to work at the post where the swastikas were found but would not work in the C2 control room. Knoskie responded that the swastikas had been removed promptly after she reported them, whereas the racial slur in the C2 control room log book had remained for nearly a year.

On March 9, 2014, Knoskie saw a workplace counselor to discuss the "mental stress, frustrating [sic], and fear involved at working in a super-max prison where she did not feel supported by her coworkers and supervisors." *Id.* at ¶ 42. The counselor placed her on short-term disability leave. Until this point, Knoskie had an "excellent performance and disciplinary history." *Id.* at ¶ 44.

Knoskie filed a timely charge of race-based discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and on March 31, 2016, the EEOC issued her a Notice of Right to Sue. She initiated this action on July 5, 2016, within ninety days of her receipt of the Notice of Right to Sue.

- 4 -

II.

Knoskie asserts that VDOC discriminated against her and created a hostile work environment based on her race, in violation of Title VII.[3] She also asserts that VDOC retaliated against her for engaging in a protected activity in violation of Title VII. Knoskie seeks damages for loss of earnings and related employment benefits and damages for emotional distress and litigation expenses, including attorneys' fees.[4]

III.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572,

---

[3] Knoskie pleads both discrimination and hostile work environment under the umbrella of Count I. For purposes of clarity, I will refer to her claim of discrimination as Count I-A and her claim of hostile work environment as Count I-B.

[4] The motion to dismiss has been fully briefed and is ripe for decision. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

Case 2:16-cv-00019-JPJ-PMS   Document 19   Filed 02/17/17   Page 5 of 22   Pageid#: 122

and it must view those facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

However, this "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Although legal conclusions can "provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" in order to survive a motion to dismiss. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)). However, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555).

IV.

A. Count I-A: Discrimination.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Knoskie has alleged that VDOC unlawfully discriminated against her because of

- 6 -

her race.  As the defendant has noted, see Def.'s Mem. Supp. Mot. to Dismiss 11, ECF No. 14, it is unclear whether Knoskie is alleging that she was the victim of disparate treatment, disparate discipline, or both.  I will address each possible claim in turn.

### 1.  Disparate Treatment.

A plaintiff claiming unlawful discrimination in the form of disparate treatment who does not offer direct evidence of discriminatory intent has the burden of establishing that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) she was treated differently from similarly situated employees outside the protected class.  *Coleman*, 626 F.3d at 190 (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Although a plaintiff need not plead facts constituting a prima facie case, she must nevertheless plead facts that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Knoskie has not done so with regard to the third and fourth elements of her claim.  She conclusorily alleges that VDOC "deprive[d] [her] of equal employee [sic] opportunities and otherwise adversely affect[ed] her status as an employee because of her race" and that it "engaged in a calculated effort to pressure her into resignation through the imposition of

- 7 -

unreasonably harsh conditions, in excess of those faced by her white coworkers."
Am. Compl. ¶¶ 59, 61, ECF No. 5.  However, she does not plead facts sufficient to
support these allegations; "[o]nly speculation can fill the gaps in her complaint."
*McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015).

First, Knoskie does not adequately plead that she was subjected to an
"adverse employment action" within the meaning of Title VII.  "Title VII liability
can arise from a tangible employment action," which includes discharge, demotion,
decrease in pay or benefits, loss of job title or supervisory responsibility, reduced
opportunities for promotion or failure to promote, and reassignment with
significantly different responsibilities.  *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th
Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-61 (1998))
(internal quotation marks omitted).  Knoskie does not plead that VDOC took any
such action against her; instead, she pleads that she was sent home for the
remainder of one workday and that she was later placed on short-term disability.
She does not allege that she experienced any decrease in her pay or benefits, that
she lost her title or responsibilities, or that either of these occurrences have reduced
her opportunities for promotion in the future.  Concluding that Knoskie is entitled
to relief would require unsupported speculation as to the possible implications of
these events.

- 8 -

Even if Knoskie was subjected to an adverse employment action within the meaning of Title VII, she does not adequately plead that such action was due to her race. Knoskie was placed on short-term disability by a workplace counselor after seeing that counselor "due to the mental stress, frustrating [sic], and fear involved at working in a super-max prison where she did not feel supported by her coworkers and supervisors." Am. Compl. ¶ 42, ECF No. 5. She does not allege that her placement on disability for these psychological stresses was unwarranted or that she was, contrary to the counselor's belief, able to continue working. She also does not allege that VDOC forced her to see this counselor or that it made her continued employment contingent on attending counseling. The obvious inference based on these facts is that Knoskie experienced psychological stress at work that made it impossible, in the counselor's view, for her to perform her job.

Knoskie argues that "exposure to discrimination based on her race was made a condition of [her] continued employment by VDOC" and that by sending her home and placing her on disability, VDOC "demonstrat[ed] to [her] that she would be disciplined for not enduring the discrimination of which she complained." Pl.'s Mem. Opp'n Mot. to Dismiss 6, ECF No. 17. I disagree, however, that the facts she pleads in her Amended Complaint support these assertions as "clear and reasonable inference[s]." *Id.* None of the facts pleaded in Knoskie's Amended Complaint reasonably support an inference that VDOC sent her home and placed

- 9 -

her on short-term disability in order to send a message that she must endure her coworkers' racism or face termination. As I noted above, she does not plead that VDOC made her continued employment contingent on attending counseling, that counseling was unwarranted, or that her placement on disability was unwarranted. Indeed, it is not even clear, based on the pleadings, that her placement on disability constituted "discipline." She provides no facts about the counselor's relationship with VDOC and does not allege that placement on disability is typically, or that it was in this case, employed as a punishment. On the contrary, the facts she pleads support a reasonable inference that she was placed on disability because of her psychological state. It would be purely speculative to conclude that she was placed on short-term disability because of her race, rather than for the reasons pleaded in her Amended Complaint.[5]

In addition to being placed on short-term disability, Knoskie was also sent home from work for the remainder of the workday after she refused to work in the C2 control room. According to Knoskie's Amended Complaint, Mathena

---

[5] Knoskie argues that because her psychological stress stemmed from the frustration and fear she felt as a result of working with racist coworkers, her placement on short-term disability as a result of this psychological stress was, in fact, due to her race. See Pl.'s Mem. Opp'n Mot. to Dismiss 6, ECF No. 17. While it may be true that Knoskie's psychological stress was the result of what she perceived to be race discrimination, VDOC's act of placing her on disability as a result of that stress cannot reasonably be framed as race discrimination in itself. The argument that she incurred psychological stress as a result of her work environment is properly raised in the context of her hostile work environment claim, not her race discrimination claim.

- 10 -

apparently sent her home because she was "hysterical" and "unable to perform her job." Am. Compl. ¶ 34, ECF No. 5. Knoskie does not allege that she was not, in fact, hysterical or unable to perform her job. Moreover, she pleads that she was generally experiencing mental stress, frustration, and fear at work. The obvious inference, based on the facts pleaded, is that Knoskie was sent home because Mathena believed, given the circumstances and her reaction, that she actually was unable to perform her job. It would be speculative to conclude that Mathena's decision to send Knoskie home was motivated by her race.[6]

Finally, Knoskie does not adequately plead that she was treated differently from similarly situated white coworkers. She alleges that she was "deprive[d] . . . of equal employee [sic] opportunities" and that "[f]ailures of safety and security were unique to black workers and were not the terms and conditions under which white officers worked." *Id.* at ¶¶ 18, 59. However, Knoskie does not elaborate regarding the employment opportunities of which she was allegedly deprived, and one is left to speculate as to what those opportunities might even be, let alone whether they were made available to her similarly situated white coworkers or whether she was deprived of them due to her race. Similarly, she does not plead facts demonstrating any "[f]ailures of safety and security," *id.* at ¶ 18, nor does she

---

[6]  Knoskie asserts that she was sent home and forced to remain on leave until her next meeting with VDOC. Am. Compl. ¶ 65, ECF No. 5. Absent some additional explanation, however, this allegation is misleading, given that she met with her supervisors the very next day after being sent home.

explain why these alleged failures were unique to black workers. She states only that she "was not confident that her fellow officers would protect her in the event of inmate violence." *Id.* at ¶ 17. One must speculate as to what those failures of safety and security might be and whether they were, in fact, unique to black workers.

Knoskie does state that on one occasion, a white coworker "refused to work a post because it was 'dirty'" but was "not disciplined in any way." *Id.* at ¶ 35-36. These allegations alone, however, are not enough to survive a Motion to Dismiss. Knoskie sufficiently pleads that she was treated differently from this unnamed white coworker. They both refused to work a certain post, and Knoskie was sent home, whereas this white coworker was not. However, she does not sufficiently plead that she and this white coworker were similarly situated. Knoskie states that she herself was sent home for being "hysterical," but she does not allege that she and her coworker had similar reactions — whether "hysterical" or not — when asked to work objectionable posts. Indeed, Knoskie undermines her own argument by asserting that when she refused to work in the C2 control room on another occasion, her manager apologized and reassigned her to another post. See *id.* at ¶¶ 27-29. These facts give rise to a reasonable inference that Knoskie was sent home on that particular occasion because she was unable to perform her job, whereas her coworker was reassigned because she was still able to work. It is

- 12 -

entirely possible that Knoskie and her coworker were both capable — or both incapable — of working, but assuming that they were similarly situated with respect to their capabilities and interactions with management requires speculation beyond the facts that Knoskie pleads in her Amended Complaint.

At bottom, Knoskie does not plead facts sufficient to support her conclusory allegation that she was subjected to adverse employment actions because of her race. Her factual allegations are not inconsistent with this conclusion, but in the absence of additional facts, her right to relief on this basis is merely speculative.

## 2. Disparate Discipline.

A plaintiff claiming unlawful discrimination in the form of disparate discipline must show that (1) she is a member of a protected class; (2) her misconduct was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against her were more severe than those enforced against other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). For the reasons discussed above, Knoskie's factual allegations are not sufficient to raise a right to relief for disparate discipline above the speculative level. She does not sufficiently allege that her misconduct was comparable in seriousness to the misconduct of her white coworker. She pleads that they both refused to work particular posts, but she provides no further details of her coworker's refusal. Given that Knoskie was apparently sent home

- 13 -

for being "hysterical," it would be speculative, based on the minimal facts alleged, to conclude that Knoskie and her coworker behaved similarly. For these reasons, and for the reasons described *supra* at IV.A.1, I will grant the defendant's Motion to Dismiss Count I-A.

### B. Count I-B: Hostile Work Environment.

Knoskie has also alleged that VDOC created a race-based hostile work environment. "An employer contravenes § 2000e-2(a)(1) [of Title VII] by, inter alia, requiring an African-American employee to work in a racially hostile environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). "[T]o prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). Element three requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile and abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). This determination requires a court to consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

- 14 -

unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). The "status of the harasser" can also be a factor in this determination, as "a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals." *Id.* at 278 (quoting *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). The harasser's status is also relevant as to whether the harassment is imputable to the employer. If the harasser is a co-worker, rather than a supervisor, "'the employer is liable only if it was negligent in controlling working conditions.'" *Id.* (quoting *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)).

Knoskie alleges facts sufficient to survive a Motion to Dismiss as to her claim of a hostile work environment. Although she conclusorily asserts that there was a "severe and pervasive hostile work environment to black workers," she also pleads facts supporting this conclusion that raise a right of relief above the speculative level. Am. Compl. ¶ 14, ECF No. 5. She alleges that use of racial slurs and race-related jokes is "common and accepted" among VDOC employees. *Id.* at. ¶¶ 15-16. She also alleges that one or more employees carved swastikas into a post and wrote "I hate n******" in a log book. Further, she states that she felt she could not rely on her fellow officers to protect her in the event of inmate violence. These allegations support a reasonable inference, without speculation, that Knoskie was subjected to a work environment that a "reasonable person in

- 15 -

[her] position" would perceive as hostile and that she herself in fact perceived as hostile. *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citation omitted).

VDOC argues that because the log book slur was a single incident that was not "directed at [Knoskie] by a supervisor or manager," Knoskie has failed to plead facts supporting her allegation that the abuse is "severe." Def.'s Mem. Supp. Mot. to Dismiss 8, ECF No. 14. It also argues that because Knoskie "fails to specify the time or frequency . . . [or] content or nature of any alleged comments" by her fellow officers, she fails to plead facts supporting her allegation that the abuse was "pervasive." *Id.* I disagree. Knoskie does not plead facts supporting only a single incident of harassment; rather, she pleads facts supporting two specific incidents of harassment, a failure of management to address one of those incidents, and a workplace culture in which racially-offensive comments are "common and accepted." The harassment is clearly frequent if offensive comments are common and accepted. Furthermore, the unwelcome conduct has clearly interfered with her job performance, given that Knoskie saw a counselor to discuss the psychological stress she experienced as a result of her work. The determination of whether a work environment is objectively hostile or abusive "is not . . . a mathematically precise test." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). I

- 16 -

believe that Knoskie has pleaded facts sufficient to support her allegation that she has experienced a hostile and abusive work environment.

Knoskie has also pleaded facts sufficient to impute the unwelcome conduct and resulting hostile work environment to VDOC without speculation. Where unwelcome conduct is perpetrated by a plaintiff's coworker, "the employer is liable only if it was negligent in controlling working conditions." *Boyer-Liberto*, 786 F.3d at 278 (quoting *Vance*, 133 S. Ct. at 2439) (citing *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333-34 (4th Cir. 2003) ("[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it.")). An employer thus "cannot be held liable for isolated remarks of its employees unless [it] 'knew or should have known of the harassment, and took no effectual action to correct the situation.'" *Spicer v. Va. Dep't of Corrs.*, 66 F.3d 705, 710 (4th Cir. 1995) (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983)) (emphasis omitted). However, "[k]nowledge of work place misconduct may be imputed to an employer by circumstantial evidence if the conduct is shown to be sufficiently pervasive or repetitive so that a reasonable employer, intent on complying with Title VII, would be aware of the conduct." *Id.*

VDOC certainly knew about the slur in the C2 control room log book. Knoskie reported it to her supervisors when she first discovered it on April 1, 2013, and she subsequently followed up with Chief Warden Mathena and

- 17 -

submitted a written incident report at his direction. In addition, Knoskie has pleaded facts supporting a reasonable inference that the defendant took no action to correct the situation. Twelve days after she initially reported the incident, Knoskie asked Mathena if she should document the incident in CORIS, the official VDOC incident report system. In response, Mathena told her not to document the incident in CORIS but to instead create her own written incident report and give it to EBT manager Hamilton, which she did. However, as of February 27, 2014 — nearly eleven months after she made her report — the slur was still present in the C2 control room log book. These facts are sufficient to support Knoskie's allegation that the defendant knew of the slur's existence but took no action to correct it. Knoskie has therefore alleged facts that support a right to relief from a hostile work environment that rise above the speculative level. For these reasons, I will deny the defendant's Motion to Dismiss Count I-B.

## C. Count III: Retaliation.

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A plaintiff claiming unlawful retaliation must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there

- 18 -

was a causal link between the protected activity and the adverse employment action. *Coleman*, 626 F.3d at 190 (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).

"Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (internal citations omitted). Knoskie has sufficiently pleaded that she engaged in a protected activity when she opposed racial discrimination at Red Onion by reporting incidents of racially-offensive epithets and refusing to work in the C2 control room when her report went unaddressed.

However, Knoskie has not adequately pleaded either that she suffered an adverse employment action or that there was a causal link between her protected activity and any adverse employment action. As I noted above, see *supra* at IV.A.1, Knoskie has not pleaded that she was subjected to an adverse employment action within the meaning of Title VII. In addition, because she has not pleaded that she was subjected to an adverse employment action, she has not pleaded that there was a causal link between her opposition and any adverse employment action. Furthermore, even assuming that her being sent home early and later being

place on short-term disability constitutes an adverse employment action, Knoskie has not pleaded facts sufficient to support a reasonable inference that such measures were imposed as a result of her opposition. As discussed above, see *supra* at IV.A.1, her own pleadings support an inference that she was sent home and placed on disability because of her inability to perform her job due to psychological stress. She therefore has not pleaded facts sufficient to give rise to a right of relief for retaliation. For these reasons, I will grant the defendant's Motion to Dismiss Count III.

### D. Leave to Amend.

In the event this Court finds that her Amended Complaint was insufficiently pled, Knoskie has requested leave to further amend her Amended Complaint. VDOC argues that Knoskie should not be permitted to amend because her "Amended Complaint suffers from irreparable deficiencies." Def.'s Reply to Pl.'s Mem. Opp'n Mot. to Dismiss 9, ECF No. 18. Specifically, it argues that Knoskie "has not alleged, nor can she allege, that she ever suffered an adverse employment action"; that she was "never disciplined for prohibited conduct" and did not "receive treatment inferior to that of [her] white coworker"; that "any allegedly harassing behavior . . . was not sufficiently severe or pervasive to constitute a hostile work environment" and was not attributable to VDOC; and that she has

- 20 -

"demonstrated no materially adverse action(s) taken against her in response to her protected activities." *Id.* I disagree.

Most of these arguments are not appropriately considered in determining whether to grant Knoskie leave to further amend her Amended Complaint because they seek to hold her to a higher standard than that applicable here. Before me is a motion to dismiss for failure to state a claim upon which relief can be granted, and not a motion for summary judgment. The question of whether Knoskie has "demonstrated" certain things is not relevant; instead, the question is merely whether she has alleged facts sufficient to support a right to relief above the speculative level.

The most glaring deficiency in Knoskie's Amended Complaint is the fact that she has not adequately alleged that she was subjected to an adverse employment action. Under the facts as currently pleaded, it seems unlikely that she did, in fact, suffer from an adverse employment action under the meaning of Title VII. Importantly, however, it is still possible for Knoskie to allege additional facts that would support a reasonable inference that being sent home and/or placed on short-term disability did, in fact, constitute an adverse employment action. It is impossible, at this stage, to definitively find that the deficiencies in her Amended Complaint are irreparable. I will therefore grant her Motion for Leave to Amend her Amended Complaint.

- 21 -

V.

For the foregoing reasons, it is **ORDERED** as follows:

1.  The defendant's Motion to Dismiss (ECF No. 12) is GRANTED in part and DENIED in part.

2.  The Motion to Dismiss is GRANTED as to Count I-A (race discrimination) and Count III;

3.  The defendant's Motion to Dismiss (ECF No. 12) is DENIED as to Count I-B (hostile work environment);

4.  The defendant's Motion to Dismiss (ECF No. 12) is DENIED AS MOOT as to Count II; and

5.  The plaintiff's construed Motion for Leave to Amend Complaint (ECF No. 17) is GRANTED, provided that any Second Amended Complaint must be filed within 14 days of this date.

ENTER:   February 17, 2017

/s/  James P. Jones
United States District Judge